AO 106 (Rev 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE   Travis Leverett 9/6/2023

9/6/23
a MG

# UNITED STATES DISTRICT COURT
### for the
### Western District of Oklahoma

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*
A HP laptop, with a serial number of SN-5CD9304VYH, seized from 2305 W Lindsey Street, Suite 103/107 Norman, Oklahoma which is currently located in secure storage at the Federal Bureau of Investigation, Oklahoma City

)
)
)
)
)
)
)

Case No.  M-23- 779 AMG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*

See Attachment A.

located in the _____ Western _____ District of _____ Oklahoma _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1956(h) | Money Laundering Conspiracy |

The application is based on these facts:

See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Andrew Ritchie, Task Force Officer, FBI
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __9/6/23__

_____
*Judge's signature*

City and state:  Oklahoma City, Oklahoma

Amanda Maxfield Green, U.S. Magistrate Judge
_____
*Printed name and title*

## WESTERN DISTRICT OF OKLAHOMA
## OKLAHOMA CITY, OKLAHOMA

STATE OF OKLAHOMA    )
                             )
COUNTY OF OKLAHOMA  )

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Andrew Ritchie, Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI), having been duly sworn, depose and state as follows:

I am a TFO with the FBI and am empowered to conduct investigations and make arrest for violations of Title 21 of the United States Code. In addition, I am a Lieutenant with the Oklahoma City Police Department (OCPD) and have been employed as a peace officer with them since May of 2006. During my tenure as a law enforcement officer, I have been involved in a wide variety of investigative matters, including numerous investigations targeting large criminal enterprises, most of which involved the unlawful distribution of narcotics in violation of 21 U.S.C. §§ 841(a)(1) and 846. As part of my drug-related investigations with the FBI, I have coordinated the execution of search and arrest warrants, conducted physical surveillance, coordinated controlled purchases with confidential sources and undercover officers, analyzed records documenting the purchase and sale of illegal drugs, and spoken with informants and subjects, as well as other local and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. Through my training and experience, I have become familiar with some of the manners in which illegal drugs are imported, distributed,

and sold, as well as the methods used by drug dealers to disguise the source and nature of their profits.

I am submitting this affidavit in support of a search warrant authorizing a search of two cellular telephones – (1) **a black Samsung Flip cellular telephone** (hereinafter **SUBJECT PHONE 1**); (2) **a purple Apple iPhone cellular telephone** (hereinafter **SUBJECT PHONE 2**) (collectively, the **SUBJECT PHONES**); (3) **a gray HP laptop SN-5CD23971WR** (hereinafter **SUBJECT LAPTOP 1**); and (4) **HP laptop SN-5CD9304VYH** (hereinafter **SUBJECT LAPTOP 2**) (collectively, the **SUBJECT LAPTOPS**) – as further described in **ATTACHMENT A**, which is incorporated into this affidavit by reference. The FBI in Oklahoma City has custody of the **SUBJECT PHONES** and **SUBJECT LAPTOPS** in Oklahoma City, Oklahoma. I am submitting this affidavit in support of a search warrant authorizing a search of the **SUBJECT PHONES** and **SUBJECT LAPTOPS** for the items specified in **ATTACHMENT B**, and to seize all items in **ATTACHMENT B** as instrumentalities, fruits, and evidence of the below referenced crimes.

Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me regarding this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant. The information contained in this affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and review of documents and records.

## BACKGROUND OF INVESTIGATION

1.   Since April of 2022, OCPD and FBI have conducted a joint investigation into the El Rincon Chapin business and its role in laundering drug proceeds for a Mexican-based drug cartel (the "DTO").  The El Rincon Chapin encompasses a restaurant in Suite 103 and a convenience store in Suite 107, which are physically connected to one another.  The convenience store includes a money remitter service that conducts international wire transfers.  The El Rincon Chapin is operated by brothers JOSE CIFUENTES and JUAN CIFUENTES.

2.   Law enforcement has developed more than eight cooperating defendants as part of its investigation into the El Rincon Chapin, each of whom has stated that they took bulk drug proceeds to the El Rincon Chapin to be wired back to Mexico-based DTO members.  Many of those cooperating defendants identified JUAN CIFUENTES as the person they handed drug proceeds to at the El Rincon Chapin.  Further, one of the cooperating defendants described meeting JUAN CIFUNTES at JUAN CIFUNTES' residence to drop off bulk drug proceeds.

3.   On August 22, 2023, OCPD and FBI executed a search warrant at the El Rincon CHapin. The purpose of the search warrant was to search for evidence of money laundering and drug distribution.  During a search of the business, law enforcement recovered money wire transfer documents.  In addition, investigators recovered a brown ledger and binder of copied documents of identification.  I believe, based on my training, experience, and knowledge of the investigation, that JUAN and JOSE CIFUENTES used the photocopied

identification documents to facilitate the wire transfers of drug proceeds from the El Rincon Chapin to DTO members in Mexico.

4. In addition to the money wire transfer documents, brown ledger and binder, law enforcement located the **SUBJECT PHONES** and **SUBJECT LAPTOPS** in the restaurant where JUAN CARLOS GRAMAJO CIFUENTES and JOSE EDUARDO GRAMAJO CIFUENTES are known to conduct business. Each of the **SUBJECT PHONES** and **SUBJECT LAPTOPS** was found in an area of the store not accessible to the public, either in an enclosed office or behind a payment counter. At the time of executing the warrant, the El Rincon Chapin was unoccupied and closed for business.

5. After the completion of the search, the seized property, including the **SUBJECT PHONES** and **SUBJECT LAPTOPS** were checked into the FBI Oklahoma City Evidence Control Room. The same day, JUAN CIFUENTES was arrested at his residence in Oklahoma City pursuant to an arrest warrant charging him with engaging in a money laundering conspiracy. On August 25, 2023, a preliminary hearing was held where United States Magistrate Judge Amanda Maxfield Green concluded that probable cause existed that JUAN CIFUENTES engaged in an international money laundering conspiracy in violation of 18. U.S.C. § 1956(h).

6. Based upon my training and experience, I am aware that individuals involved in laundering money for drug trafficking organizations often use cell phones and laptops to maintain contact with other co-conspirators, including suppliers, transporters, distributors, and purchasers of illegal narcotics. Such devices and their associated memory cards commonly contain electronically stored information which constitutes evidence, fruits, and

instrumentalities of drug trafficking offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, and videos.

### Technical Terms

6.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or

locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations.

PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the

Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

7.     Based on my training, experience, and research, I know that each of the **SUBJECT PHONES** have capabilities to allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and a PDA. I also know that each of the **SUBJECT PHONES** is capable of connecting to and surfing the internet.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Further, I know that each of the **SUBJECT LAPTOPS** can function as a device to send and receive emails, conduct wire transfers, conduct banking activity, access social media platforms, and create and store location information.

8.     As set forth in **Attachment B**, the warrant I am applying for requests authorization for search and seizure of only those electronic devices which appear to be found in a location or under circumstances indicating they are not used exclusively for family use or use by children who may reside at the Subject Premises and therefore is limited to computers or electronic devices which are likely to contain the evidence sought by this application.

### Electronic Storage and Forensic Analysis

9.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been

viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

10.    I know that cellular telephones are often equipped with digital cameras and those phones possess the capability to transmit and/or store electronic images. I know that in many cases, cellular telephones maintain photographs of illegal activities. These photos are sometimes stored in their cellular phones and often are transmitted or sent from one electronic media device to another. I also know that cellular phones may also contain notes regarding potential illegal acts that are recorded by the subject who possesses the electronics. Furthermore, I know that text messages and emails are often used by two or more persons to communicate information regarding illegal activities, between principals and co-conspirators of those crimes.

11.    I know that cellular telephones are utilized by the majority of individuals in the United States and have become a staple of communication between individuals using text messaging, visual and audible communications (telephone calls and FaceTime type communications) as well as applications like "Whatsapp" and "GroupMe." Additionally, individuals utilize their cellular devices to take pictures, keep notes, as a GPS (global positioning System) device, and even to conduct illicit or illegal activity. Communications on phones are kept for long periods and transferred from one phone to another when replaced. This is done through the use of Cloud storage and direct transfer conducted at the time of purchase or by the individual themselves. Individuals utilize this method as not to lose data that is stored on the phone such as contacts, photos, notes, and other important

information to the individual. This data includes contacts used to conduct illegal activities to include drug trafficking and money laundering.

12.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.    The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend

on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.      I know that when an individual uses an electronic device to communicate about drug trafficking or associated money laundering, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

13.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT PHONES** and **LAPTOPS** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

14.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

*Methods of examination.* In conducting this examination, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crime(s) under investigation, including but not limited to undertaking a cursory inspection of all information within the Devices. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with stored cellular device data, such as pictures and videos, do not store as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications associated with a cellular device, as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications. Consequently, often many communications in cellular device data that are relevant to an investigation do not contain any searched keywords.

## CONCLUSION

Based on the above information, there is probable cause to believe that violations of 18 U.S.C. § 1956(h) have occurred, and that evidence, fruits, and instrumentalities of these offenses are located on the **SUBJECT PHONES** and **SUBJECT LAPTOPS**. Therefore, I respectfully request that this Court issue a search warrant for the **SUBJECT PHONES** and **SUBJECT LAPTOPS**, described in **Attachment A**, authorizing the seizure of the items described in **Attachment B**.

Andrew Ritchie
Task Force Officer
Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me this 6th day of September, 2023.

AMANDA MAXFIELD GREEN
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is a gray HP laptop, with a serial number of SN-5CD9304VYH, found at 2305 W. Lindsey Street, Suite 103/107, Norman, Oklahoma (the "Subject Laptop"). The Subject Laptop is currently located at FBI Oklahoma City, 3301 W Memorial Road, Oklahoma City, Oklahoma.

1

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

All records, photographs, videos, and other electronically stored data on the **SUBJECT LAPTOP** described in Attachment A that relate to violations of 18 U.S.C. § 1956(h) involving money laundering located 2305 W. Lindsey Street, Suite 103/107, Norman, Oklahoma, including but not limited to:

a. lists of customers, suppliers, and related identifying information;

b. documents or communications related to wire transfers conducted by JUAN CIFUENTES, JOSE CIFUENTES, or their agents;

c. documents or communications related to wire remission services taking place at El Rincon Chapin, including documents or communications involving that business or its operators association with money services businesses such as Maxi Money Services, Intercambio, Western Union, or similar enterprises;

d. identification documents or lists of identities used to facilitate the wiring of money the wire transfers occurring at the El Rincon Chapin;

e. types, amounts, and prices of drugs or drug proceeds as well as dates, places, and amounts of specific transactions;

f. any information related to sources of drugs or drug proceeds (including names, addresses, phone numbers, or any other identifying information);

g. text messages, multi-media messages, e-mail messages, and other communications related to drug trafficking or money laundering;

1

h.  all bank records, checks, credit card bills, account information, and other financial records.

Evidence of user attribution showing who used or owned the **SUBJECT LAPTOP** described in Attachment A at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

a.  records of Internet Protocol addresses used;

b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2